UNITED STATES FIDELITY & GUARANTY CO. v. OMAHA BLDG. & CONST. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 21, 1902.)

No. 1,644.

1. BONDS—CONTRACTOR FOR PUBLIC WORK—LIABILITY OF SURETY.

Where, in accordance with the express requirement of a statute, the bond of a contractor with the state for the construction of a public building was conditioned that the contractor should "pay for all material and labor entering into or employed in the construction of said building," the surety is not relieved from liability to persons furnishing labor or materials because the state failed to retain from estimates made as the work progressed the per cent. reserved by the contract, nor because the contractor assigned to a third party payments due from the state, there being nothing in the contract or bond prohibiting such assignments.

Appeal from the Circuit Court of the United States for the District of Nebraska.

James McCabe (E. G. McGilton, on the brief), for appellant.

Martin Langdon, H. C. Brome, J. B. Barnes, M. D. Tyler, A. H. Burnett, I. Powers, J. R. Hays, W. H. De France, and A. N. Ferguson, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. In 1897 the legislature of Nebraska passed an act (chapter 41, Laws 1897) providing for the erection of an additional wing to the state's hospital for the insane at Norfolk. The act contained the following, among other, provisions:

"Sec. 4. The contractors shall be required to give bond in the sum of twenty-five thousand ($25,000) dollars to be approved by the board of public lands and buildings, for the faithful performance of said work, and that all bills for work done and material furnished shall be paid for. Said contractor shall receive pay on monthly estimates, made by the superintendent of such work. Such superintendent to be appointed by the board of public lands and buildings at compensation not exceeding four ($4) dollars per day. Said superintendent shall be required to give his whole time to the work.

"Sec. 5. Fifteen (15) per cent. of each estimate shall be retained until the work therein provided for shall be completed and accepted by the board of public lands and buildings."

The state, through its proper officers, entered into a contract with the Omaha Building & Construction Company for the erection of the building, and the United States Fidelity & Guaranty Company, the appellant, became the surety on the bond of the construction company for the faithful performance of its contract with the state for the erection of the building. The following is the condition of the bond:

"Now, therefore, the condition of the foregoing obligation is such that if the above bounden Omaha Building and Construction Company shall well

116 F.—10

and truly comply with all the terms, covenants, and conditions of the said contract on its part to be kept and performed, according to its tenor, and shall well and truly pay for all material and labor entering into or employed in the construction of said building, then this obligation to be null and void; otherwise, to be and remain in full force and virtue in law."

The construction company failed before completing the building in accordance with the terms of its contract, and abandoned the work, owing several persons for labor and materials furnished for the structure. Thereupon the appellant filed this bill against the persons to whom the construction company was so indebted for labor and materials, alleging it was not liable on its bond for such debts, and praying that it might be so decreed, with the alternative prayer that, if it was adjudged liable for such debts, an account might be taken of the amount severally due the appellees for the labor and materials furnished by them respectively. The lower court found the appellant was liable on its bond to the appellees for the amounts due them for labor and materials furnished by them, respectively, and rendered a decree accordingly, from which decree the complainant appealed to this court.

The appellant seeks to avoid its liability on the bond on two grounds: (1) That the state did not retain 15 per cent. of each estimate of the work at the time it was made, as provided in the contract between the state and the construction company and the act of the legislature; and (2) that the construction company assigned all the money owing or coming to it under the contract to the Omaha National Bank, and that the treasury warrants issued to the construction company for work done under the contract were assigned to the bank and collected by it.

It will be observed that this is not a controversy between the appellant and the state, and we need not, therefore, inquire whether the rights of the state under the bond would be in any manner affected by the acts complained of by the appellant. It is clear the rights of the appellees who furnished the labor and materials are not injuriously affected by the acts complained of. One answer to the objection that the 15 per cent. on the estimates of work and materials was not retained out of each estimate at the time it was made is that that percentage on the aggregate amount of all the estimates was retained out of the last estimates, so that the construction company received but 85 per cent. on the aggregate amount of its estimates in the end. Neither the contract nor the bond contains any restriction on the power of the construction company to assign its earnings under the contract, and we do not perceive what grounds the appellant has to complain of such an assignment.

But another and conclusive answer to these objections is that the appellant, by the express terms of its bond, bound itself to "pay for all material and labor entering into or employed in the construction of said buildings" to the persons furnishing the same, and it is not alleged or pretended that the appellees, who furnished the materials and labor, said or did anything to the injury of the appellant or to the prejudice of their own rights under the bond. They had nothing to do with the estimates or their payment, and nothing to do with the

construction company's assignment of its earnings under the contract, and are in no manner affected thereby. Their rights rest on the covenant in the bond which the statute required to be inserted for their security and protection. This covenant is quite independent of the covenants contained in the bond for the security and protection of the state. In the case of U. S. v. National Surety Co., 34 C. C. A. 526, 92 Fed. 549, we had occasion to consider the legal rights of those who furnished labor and materials to a contractor under a bond similar to the one involved in this suit, and the court, speaking by Judge Thayer, said:

"The two agreements which the bond contains, the one for the benefit of the government, and the one for the benefit of third persons, are as distinct as if they were contained in separate instruments, the government's name being used as obligee in the latter agreement merely as a matter of convenience. In view of these considerations, we are of opinion that the sureties in a bond, executed under the act now in question, cannot claim exemption from liability to persons who have supplied labor or material to their principal to enable him to execute his contract with the United States, simply because the government and the contractor, without the surety's knowledge, have made some changes in the contract, subsequent to the execution of the bond given to secure its performance, which do not alter the general character of the work contemplated by the contract or the general character of the materials which are necessary for its execution. When the government has executed the contract and taken and approved the bond, it ceases to be the agent of third parties whom the contractor employs in the execution of the work or from whom he obtains materials, and the rights of such persons under the bond are unaffected by subsequent transactions between the government and the contractor. If such were not the case, it would be possible for the contractor and some officer of the United States, by making some change in the contract or specifications, to deprive laborers and material men of all recourse against the sureties in the bond after they had supplied materials and labor of great value in reliance upon its provisions. It is not probable that such a result was contemplated by the lawmaker. On the contrary, the act bears every evidence that it was intended to provide a security for laborers and material men on which they could rely confidently for protection, unless they saw fit, by their own dealings with the contractor, to relinquish the benefit of the security. We are confirmed in these views by the following authorities: Dewey v. State, 91 Ind. 173; Conn v. State, 125 Ind. 514, 25 N. E. 443; Doll v. Crume, 41 Neb. 655, 59 N. W. 806; Kaufmann v. Cooper, 46 Neb. 644, 65 N. W. 796; Steffes v. Lemke, 40 Minn. 27. 41 N. W. 302."

It must not be inferred from anything we have said that the acts complained of by the appellant would in any manner affect the rights of the state under the bond; as before said, that question is not in this case.

The decree of the circuit court is affirmed.